Matthew M. Levy, J.
(I)
After providing for a number of bequests, legacies and trusts in various articles of her last will and testament, Maude S. W. McKay, the decedent, disposed of the residue of her estate in the following language:
“ teeth : — All the rest, residue and remainder of my Estate, both real and personal, and wheresoever situate, I give, devise and bequeath unto The Ministers & Missionaries Benefit Board of the Northern Baptist 'Convention, a corporation of the State of New York, to be invested and reinvested and the income applied to the objects of said organization.
‘ ‘ My will is, however, that said organization shall first use the said income for the alleviation of suffering from arthritic or other incurable disease, illness or condition, and/or for the comfortable maintenance and support, of any person or persons who may be living at the time of my decease and who may be connected by blood (but not beyond the tenth degree), either with my husband, James Pickens McKay, or with me. It is *234 my purpose that the income on said residue shall he ultimately and solely devoted to the purposes of said organization, but that those near to me and my husband may have first call thereon for the purposes and within the limitations above mentioned. To that end it is my wish that said organization use its sound discretion in the expenditure of said income both as to amount and beneficiary, bearing in mind always that the care of incurables, and particularly arthritics, is nearest to my heart; and to said organization I leave the decision, on whatever proofs may be required, as to what persons are connected with my husband and with me as aforesaid. Should there be a balance of said income remaining in any year, after carrying out the above provisions, then said organization is empowered to use said balance in any following year for the general purposes for which it is formed.
1 ‘ It is my further wish that the principal of said residue be given some suitable name in memory of my beloved husband.”
The will was executed on February 11, 1932. The testatrix died on September 12, 1932. The plaintiff is a religious and charitable corporation, and is the residuary legatee and the trustee named, in the will.[1] This action was instituted in July, 1968 for a declaratory judgment decreeing that the plaintiff has properly administered the fund thus bequeathed to it.
The objects of the plaintiff organization are stated in the amended act of its incorporation as follows: “ [T]o administer its funds for the benefit of ministers and missionaries who have served the Baptist denomination, their spouses or surviving spouses and their dependent children, and to attain these objects either directly or through the medium of related organizations; to cooperate with such organizations in securing, so far' as practicable, uniformity in the methods for the extension of such aid; to promote interest in the better maintenance of the ministry; also, to receive and administer funds to provide benefits to other persons who as employees have served the Baptist denomination, and to their spouses or surviving spouses and' their dependent children; and to adopt such measures to these ends as may be recommended by the American Baptist Convention.”
In its complaint, the plaintiff alleges that it has properly administered the trust according to the provisions of article Tenth of the will. As a result of the state of the pleadings *235 and the hearing before me,[2] the following facts may be deemed to have been satisfactorily proved in support of the plaintiff’s complaint: The assets received by the plaintiff from the McKay estate have been separately held, invested and reinvested. In the exercise of its sound discretion, it has made numerous grants out of the income of the trust fund to qualified relatives of Mr. and Mrs. McKay. In addition thereto, grants have also been made to retired ministers, missionaries and other employees of the American Baptist 'Convention. This constitutes a significant part of the work of the Ministers and Missionaries Board. Approval of a grant and the amount thereof depend upon the individual needs of the person applying therefor. However, consideration is also given to, and the amount of the grant would be influenced by, the total income available in the trust, the number of persons from whom the plaintiff had received applications, and the possibility that during the year other applicants may submit requests for aid. The plaintiff has made grants to certain persons for medical reasons (the alleviation of suffering from illnesses), or for the comfortable maintenance and support of persons applying for such grants. Although it does not adopt as a goal the spending of all of the income to be received, and does not devote the entire income to beneficiaries as they make applica *236 tions to it, the plaintiff has never limited the amount of a grant in order to furnish funds to itself. Grants made during the year are not re-evaluated to provide additional funds to applicants, but those who apply are informed at the time when they receive their grants that additional applications may he presented during the year.
(II)
The contesting defendants[3] have challenged the plaintiff’s administration of the trust (a matter which will be considered in the later portions of this decision); but they submit primarily that the testamentary disposition made in article Tenth of the will must fail in that it violates the Rule Against Perpetuities and is not a valid bequest, either to the plaintiff for its own benefit or as a trust limited as it is to those relatives to be selected and in those amounts to he determined by the plaintiff as trustee. The logical result of this contention is that the property attempted to be disposed of in article Tenth must descend by intestacy.
*237 The plaintiff argues, on the other hand, that, if one were to conclude that article Tenth creates a beneficial interest in relatives of the testratrix and her husband within the 10th degree who were living at the time of her death, then the bequest in that respect only would be void, because the class is so extensive that it is impossible to ascertain its membership. Therefore, contends the plaintiff, the bequest to the class of relatives provided for under the article must fail because the identity of the beneficiaries cannot be definitely determined as of the time of the death of the testatrix, or at some time within the Rule Against Perpetuities, and in any event that it is impractical to divide the property in such minuscule fashion among them. A logical extension of this contention would vest the gift absolutely in the plaintiff under the first paragraph of the bequest, devoid of any legal obligation to give effect to the testatrix’s intention as expressed in the second paragraph, other than by a so-called 1 ‘ power collateral” (Matter of Gulbenkian’s Settlement Trusts [1967] 3 All E. R. 15, 18; see § VII, infra).
Thus, both of the opposing parties urge that the Rule Against Perpetuities is applicable and that the rule invalidates basic elements of the bequest. But they disagree as to what is rendered void by the invocation of the rule. The validity of these respective contentions must depend upon an interpretation of article Tenth and a construction of the language used therein, and the operative meaning of the Rule Against Perpetuities. The crucial and determining factor is, of course, the intention of the testatrix, which must be gathered from an examination of the will and the language employed by her. In this judicial voyage, I proceeded with some difficulty because of the paucity of distinct authoritative precedents in certain critical areas. The route was a long and circuitous one, particularly since it was necessary to steer a satisfactory course between the dangers of the forensic Scylla and Charybdis projected by the contending litigants. And now, I must frankly say that (while I have, at long last, returned to my home base of required ultimate decision, more or less safely, I think) my expedition, although here and there eventful, has not been completely fruitful, for I have not succeeded in gathering (at least, en route) adequate supporting cargo. The simple result of my intellectual travels is that I must, at several ports, rely entirely upon my own resources. And I recognize full well that, no matter how interesting the itinerary, final arrival there must be. In the circumstances, I deem it meet to undertake to chart the *238 calm seas and the turbulent tempests I encountered on my odyssey, not only as a recorded log of my own trip, but, hopefully, as some aid to an interested explorer.
However, before directing my attention to the basic issues, I note the preliminary question of choice of law — that is, under the law of which jurisdiction should this will, and in particular article Tenth thereof, be interpreted and construed, and sustained or invalidated?
The testatrix was domiciled in New Jersey at the time that the will was executed and at the time of her death. The will was executed in that State. The trustee (Ministers and Missionaries Board) is a New York corporation; and the trust fund has always been administered in the State of New York. The question, then, is whether the will and the language used therein should be interpreted and construed in accordance with the law of the State of New York or in accordance with the law of the State of New Jersey. That, of course, must be determined by the law of the forum (see my opinion in National Grange Mut. Ins. Co. v. Lipscomb, N. Y. L. J., Jan. 6, 1970, p. 17, col. 1).
The several parties — even those who support the plaintiff’s prayer ■ — do not agree as to which law is controlling. The plaintiff takes the position that the law of New Jersey is applicable, and states that, because of the ‘ ‘ unique ’ ’ nature of the bequest, there are no New York cases in point — and since, indeed, there are no New Jersey precedents on all fours either — there is no reason to conclude that New Jersey and New York would differ in their interpretation of the will, and in their determination as to its validity. The Attorney-General states that the plaintiff’s memorandum “ canvasses the applicable law that is pertinent in support of the validity of the charitable purpose ” and he V concurs in the recital ” thereof and “ believes that the Court should grant the relief that is requested in the ” complaint. The guardian ad litem, on the other hand, “ assumes ” that New York law would apply (basing his statement upon the view that it is the law of the place of administration and of the State of incorporation of the grantee named in the will which governs the validity and construction of the gift); although he also “suggests” that the bequest would be upheld — albeit, perhaps, differently construed in its effect — under the laws of the State of New Jersey. The contesting defendants cite no authorities, and do not express any view as to which State’s law is to be applied by the court.
Confronted, as I was, with this dilemma (indeed, not only as to this proposition, but also in respect of several other *239 issues requiring resolution in the case at bar), I felt impelled to undertake a research and analytical safari of my own.
(HI)
The New York statute having to do with the choice of law as to the validity and effect of testamentary dispositions was (at the time the testatrix made her will and at the time of her demise) section 47 of the Decedent Estate Law. It provided, in its pertinent part, that ‘* 1 **the validity and effect of a testamentary disposition of any other property [than that of an interest in realty] situated within the state * * * are regulated by the laws of the state or country, of which the decedent was a resident, at the time of his death. Whenever a decedent * * * wherever resident, shall have declared in his will and testament that he elects that such testamentary dispositions shall be construed and regulated by the laws of this state, the validity and effect of such dispositions shall be determined by such laws.”[4] (Cf. “ Trusts of Movables in the Conflict of Laws,” 36 N. Y. Univ. L. Rev. 713, 722.)
In the light of the provisions of the present will, has the testatrix elected that her testamentary dispositions he construed *240 and regulated by the laws of this State? There is no express election in so many words, but there appears what may be deemed to be an implied declaration to that effect, when one notes that the trust res is in New York and that a New York trustee was named by the testatrix in her will. What Professor Beale said in that regard is of moment: “ In the case of a testamentary trust, the seat of the trust is usually the domicil of the testator, where the will takes effect, unless a contrary intention appears, as by naming a foreign trust company as trustee ” (2 Beale on Conflict of Laws, p. 1024; emphasis supplied by Erdheim v. Mabee, 305 N. Y. 307, 314 [1953]) ;[5] particularly in the light of what is stated in section 298 of *241 the Restatement of Conflict of LawsA testamentary trust of movables is administered by the trustee according to the law of the state of the testator’s domicil at the time of his death unless the will shows an intention that the trust should be administered in another state ”, and in Comment “ C ” on that section: “If the testator appoints as trustee a trust company of another state, presumptively his intention is that the trust should be administered in the latter state; the trust will, therefore, be administered according to the law of the latter state.” And then it is stated in section 269 of the Restatement 2d, Conflict of Laws (Proposed Off. Draft, 1969): that — “ except when the provision is invalid under the strong public policy of the state of the testator’s domicil at death, ”-^- ‘ ‘ the validity of a trust of interests in movables created by will is determined * * * as to matters that affect only the validity of the trust provisions,” “by the local law of the state of the testator’s domicil at death, except that the local law of the state where the trust is to be administered will be applied if application of this law is necessary to sustain the validity of the trust.”
When the problem arises, “ the court may take into consideration the fact that the trust would be valid under the law of the domicil of the testator; although it would be invalid under the law of the place of administration; or, conversely, that it would be valid under the law of the place of administration, although it would be invalid under the law of the testator’s domicil. * * * [W]hen the question is as to the applicable law, the court will tend to apply the law of the state which makes the disposition valid” (5 Scott, Trusts, 3d ed., § 593, p. 3892).
That brings to the fore what might be termed a secondary — although an equally vigorous — rule governing the choice of law in respect of the validity of the testamentary disposition .made in the case at bar: if possible, that law should be applied which upholds the trust. In that connection, I note what the Court of Appeals had occasion to say, in a case involving a widow’s right of election as distinguished from that which concerned a testamentary disposition, in recalling the historical background of section 47 (Matter of Clark, 21 N Y 2d 478 [1968]). There, speaking for the court, Chief Judge Furs remarked (p. 485) that, despite the then statute which (without exception being made for a case where the testator might express a contrary intent, as indicated in the last sentence of section 47 quoted above) provided that the validity and effect of a testamentary disposition of personalty were to be regulated *242 by the law of the domicile, the “ cases decided before [citing], as well as after [citing] its adoption, held that, when personalty had been placed outside the domiciliary jurisdiction, a testamentary disposition of the property which violated (for example) the domicile’s rule against perpetuities or its mortmain statute — the cases dealt almost invariably with charitable bequests — would be given effect if valid under the law where the property was situated. The declared purpose of the courts was, if possible, to give effect to, and not frustrate, the testamentary disposition ’ ’.
I hold, therefore, that the testamentary clause herein involved is to be tested as to validity in accordance with the laws of the State of New Jersey (the testatrix’s domicile at the time of execution of the will and at the time of her death) or by the laws of the State of New York (the situs of the trust, the locality of the trustee, and the locus of administration) depending upon which State will look most favorably upon the disposition intended to be made by the testatrix and its implementation accordingly. And it is by the law of that State that the testamentary language in the crucial article should be interpreted, the validity of the trust determined, and the effect of its disposition evaluated.
(IV)
Since New Jersey was the State of the testatrix’s domicile at her death, I shall now consider the state of the law of New Jersey in respect of the validity and construction of the bequest contained in the will executed in that State. With no cases precisely in point to rely upon, I must necessarily examine what precedents there are in an attempt to understand the nature and effect of the clause before me.
I have been informed by counsel that the Supreme Court of New Jersey has had occasion to review the very article of the will sub judice herein. (Ministers and Missionaries Benefit Bd. of Northern Baptist Convention v. Thayer-Martin, 118 N. J. L. 465 [1937].) The present plaintiff, there as prosecutor suing the New Jersey State Tax Commissioner, sought a judicial determination as to whether the succession tax payable with respect to the bequest should be at the 5% rate allowed to charities and benevolent organizations, or whether it should be at the 8% rate imposed upon noncharitable distributions. The court held that, under the New Jersey succession tax statute then in force, the higher rate was applicable. This holding was premised upon the finding that, while the plaintiff’s functions were partly charitable, they were also partly non- *243 charitable in that it provides for life and endowment insurance for Baptist ministers (p. 466).[6]
I do not negate the holding of the New Jersey court — necessarily limited, as it was, to certain tax implications and consequences— but it is my view that, in respect of the problem now before me, it is the law of the State of incorporation that determines the status of the corporation and its nature and functions (23 N. Y. Jur., Foreign Corporations, §§ 20-25), and that it is its charter or certificate of incorporation that governs (11 N. Y. Jur., Corporations, § 3). Therefore, it is for this court, as a tribunal of the State of New York, and as the court of the forum, to determine, on the facts presented to it, the legal character of the plaintiff corporation, and, to understand the objects for which it was created, “ recourse must be had to the act by which it was incorporated or to its charter and the statute under the authority of which it was framed ” (Matter of De Peyster, 210 N. Y. 216, 219 [1914]). As a consequence— notwithstanding that New Jersey seems to have held, at least for certain tax purposes, that the plaintiff is not a charitable corporation — I shall train my sights on what I believe the New York courts, under the facts presented to me in this case, would conclude as to this aspect of the case.
I take judicial notice that the plaintiff was incorporated in 1913 by a special act of the New York State Legislature. In 1930, its purposes • and powers were extended in part and modified in part by this court, and there was due investigation, inquiry and approval thereof by the New York State Board of Charities (designated the State Board of Social Welfare). I have examined the purpose clauses of the plaintiff, as expressed in the initial legislative enactment, and in the subsequent amendments by certificate, on file in the New York County Clerk’s office. I am of the view that the language contained therein denotes that the plaintiff’s function is unquestionably charitable. It has been held to be a tax-exempt corporation by the United States Internal Revenue Service, under section 501 (subd. [c], par. [3]) of the Internal Revenue Code of 1954, in that it is a corporation “ organized and operated exclusively for religious, charitable * * * or educational purposes It is alleged in the complaint (and not contested) that the objects of the plaintiff are charitable; that, as a charitable corporation, it is subject to the supervision of the Attorney-General of the State of New York; and that the surplus income ‘ ‘ has been paid, as provided by said *244 paragraph [Tenth], into the general funds of the plaintiff for its use towards charitable purposes.”
In Matter of De Peyster (210 N. Y. 216, 221-222, supra) the court — pointing out that “the purpose of the corporation as stated in the act of incorporation and in its by-laws is clear and unambiguous ”, and “ its purpose, as expressed, needs no explanation or interpretation” — held that, “in a proceeding of this kind [involving the determination of a tax liability] it is only for the purpose of determining the character of the work undertaken pursuant to the powers expressly given to a corporation by its charter or act of incorporation that oral testimony can be given. Oral testimony should not be received simply to show that a corporation had undertaken work that was outside of its corporate powers. It was quite unnecessary in this case for the purpose of construing the act of incorporation to inquire what had been done under it by its incorporators ’ ’.
In Matter of White (118 App. Div. 869, 871 [1st Dept., 1907]), involving the reverse of the Thayer-Martin situation, the court held that ‘ ‘ the status of [the] corporation must be determined by the statutory law and its certificate of incorporation rather than what it has assumed to do thereunder ”, and the court refused to consider evidence tending to show that the business transacted by the organization in question was charitable in nature. Thereafter, the Second Department, in Matter of Moses (158 App. Div. 525, 529, 532 [1910]), agreeing with the view taken by the court in White as to the corporate charter being controlling, was nevertheless of the opinion that proof could be received of the character of the work undertaken by the corporation pursuant to its powers (pp. 529-530). In another case (People ex rel. Hodkinson Corp. v. Cantor, 119 Misc. 604, 606 [1922], affd. without opn., 206 App. Div. 698 [1st Dept.]), the court refused to limit itself to the certificate of incorporation, and said that “ the test is what the company actually does, not what it is authorized to do ’ ’.
There is thus a seeming conflict in the New York cases. But all of them (as in the New Jersey case concerned with the status of the present plaintiff trustee) pertained to tax problems — a rather sui generis field of the law, and, by consequence, not a sure guide in other areas. At any rate, I am of the view that, whether I look to the articles of incorporation of the trustee or to the proof before me as to its functioning thereunder, or both, insofar as its rights and duties under this bequest are concerned, it is a charitable corporation.
*245 (V)
Moreover, were I constrained — because of the Thayer-Martm decision hereinbefore mentioned — to hold that the plaintiff is not a charitable corporation, it would not (for the reasons hereinafter given) alter my ultimate determination as to what the courts of New Jersey would hold with respect to the validity and construction of the bequest under consideration. And I say this, notwithstanding that I have not been informed by counsel of any New Jersey decision in point, and I have not found any.
This brings into play (in respect of New Jersey) the function of the forum court in determining what the foreign law is when the courts of that other jurisdiction do not appear to have specifically resolved the issue. And in that regard, I refer first to what Chief Judge Fuld said in Nader v. General Motors Corp. (25 N Y 2d 560, 566 [1970]) (as to the District of Columbia): “We must, in effect, predict what the judges of that jurisdiction’s highest court would say if this case were presented to them. (See, e.g., Cooper v. American Airlines, 149 F. 2d 355, 359, per Frank, J.) ”, and then to what I myself had occasion to say in Phillips v. Phillips (15 Misc 2d 884, 889-890 [1958]) (as to Georgia) and in National Grange Mut. Ins. Co. v. Lipscomb (N. Y. L. J., Jan. 6, 1970, p. 18, col. 4, supra) (as to Maryland and New Hampshire). Although the area of law relevant to the issue in each case is altogether different from that involved in the others, the applicable principles and the process of judicial approach are the same. That is to say, since it is for me to determine what the applicable New Jersey law is, I must assume to propound what the Supreme Court of the State of New Jersey would decide on the point were the point to be decided in New Jersey.
(VI)
Matter of Butler (137 N. J. Eq. 48 [1945], affd. 137 N. J. Eq. 457 [1946]) is a precedent that required study. The testator had bequeathed his residuary estate to trustees ‘1 to use the income thereof to provide annual scholarships for higher education to deserving children resident in Nassau, Bahamas * * *. It is my wish that preference in the awarding of these scholarships be always given to the descendants of my brothers and sisters if they are in need of and apply for such assistance. My said trustees or their successors in office shall and may make such reasonable rules and regulations as may to them seem advisable for the awarding of said scholarships.” The Butler respondents (next of kin of the testator) contended, principally, that the preference *246 given descendants of the testator’s brothers and sisters was a clever scheme of the testator to ensure the free education of his brothers and sisters, and that it was not his object to benefit the public of Nassau generally. However, the court found that, while the situation might vary from year to year, it seemed likely that the trust fund would be of real value for the promotion of higher education in Nassau, in that three of the four feasible scholarships available from the annual trust income would go to children not related to the testator. In the course of his opinion, Vice-Ordinary Bigelow in the New Jersey Prerogative Court, quoted (p. 49) from Woodstown National Bank v. Snelbaker (136 N. J. Eq. 62) to the effect that: 1 ‘ The question is not what the testator desired to accomplish by the trust, but what, in the opinion of the court, will be the result of the trust upon the community and society in general. What would be the net result of such a trust as testator described? ” And, continuing (p. 50) the Vice-Ordinary held: ‘‘ The essential feature of a charitable trust is the benefit to the public of a sufficiently large class, so that the community has an interest in the trust. ’ ’ Similarly, in the case at bar, the plaintiff, after making grants to qualified relative-applicants, was entitled to and did utilize the balance of the trust income for its general charitable purposes — which would benefit a substantial class of the public not related to the testatrix or her husband.
As Vice-Ordinary Bigelow said (p. 49): “A trust for the benefit of the descendants of the donor’s relatives is not a charitable trust. But if a trust be created for a charitable purpose, the giving of a preference to those members of a certain family who come within the general class of beneficiaries, does not deprive it of the character of a charitable trust or convert it into a private trust. In re MacDowell (N. Y.), 112 N.E. Rep. 177; Restatement-Trusts, § 375(c); Bogert on Trusts, § 362; 3 Scott on Trusts, 2031; Annotation 131 A. L. R. 1289. It seems' to me clear that the preference desired by Dr. Butler does not invalidate the gift. His will means that if there shall be among the deserving children of Nassau, descendants of his brothers and sisters who are in need of financial assistance for their higher education and apply to the trustees for scholarships, then they shall be given a preference. They will not be eligible unless they are deserving children, resident in Nassau, and unless they are in need of such assistance.”
The Butler decision was affirmed by the New Jersey Court of Errors and Appeals “ for the reasons stated in the opinion filed in the court below by Vice-iChancellor Bigelow ” (137 N. J. Eq. 457, 458; see, also, 4 Scott, Trusts [3 ed.], § 375.3, p. 2964).
*247 The essence of the Butler holding is that, if a trust is created for a charitable purpose, the fact that preference is given to members of a certain family who come within the general class of beneficiaries does not disturb the charitable nature of the trust.
Taking into account the statutory and certificated purposes of the plaintiff organization and the language of the will, it might appear, at first blush, that the testatrix intended to make a charitable bequest to the plaintiff for use in caring for ill or needy persons, with a preference in the disbursement of the income to those of her relatives who come within a specified category, and with the surplus income to be utilized for those retired ministers, missionaries and other employees of the American Baptist Convention who are also ill or needy.
If so, Butler would be squarely in point and the issues in this suit would have been readily determined. True, there is proof before me that the annual income remaining after making grants to relatives is turned over to the plaintiff to be (and is) used for its “ charitable purposes ”, and there is testimony to the effect that, from its general funds, the plaintiff makes grants to the nonfamilial personnel affiliated with the Baptist faith similar to those provided for by the testatrix as to her relatives. But it should be noted that, under the will, such surplus annual income (turned over, as it is, to the general funds of the plaintiff) may be and is used by the plaintiff “ for the general purposes for which it is formed ”; and that, under the first paragraph of article Tenth, the income from the remainder of the estate is to be applied to the objects of the plaintiff. The objects and practice of the plaintiff — shown either by way of its corporate charter and certificates and undisputed allegations or testimony — are broad enough in scope to warrant and require the finding that grants may be and are made not only to the ill or needy who have served that religious organization, or to members of their families similarly situated, but also for other purposes — such as “to promote interest in the better maintenance of the ministry ”, “and to adopt such measures to these ends as may be recommended by the American Baptist Convention.” Worthy and important as these other functions may be in the religious area, and charitable although they are in the eyes of the law, they are not parallel to the line established by the testatrix for those of her relatives who are to receive her bounty through the plaintiff as conduit. Per contra there is no proof (at least, with adequate specificity) that the allowances granted by the plaintiff to nonrelatives out of the surplus annual funds received by the plaintiff from the trust, on the one hand, were limited to and used exclusively for the *248 the same purpose — that is the grants of aid to those persons who are ill or needy, which were, on the other hand, the specific burden of the express intent of the testatrix in giving preference to her relatives.
Therefore, although I find the Butler decision helpful in some respects, it is not sufficiently in point to permit a categoric disposition of the issues before me. For in Butler the aim of the testatrix was education for relatives and for the public; in the case at bar, on the contrary, the intent was to be of assistance only to the ill and needy relatives, and to aid the general ministry and purposes of the Baptist Church, whether or not they come within the narrower ambit of the clause classifying those relatives who may receive grants from the trust.
(VII)
Continuing my study of the New Jersey precedents, I proceed upon another route.
In Litcher v. Trust Co. of N. J. (11 N. J. 64 [1952]), the testator, Thomas J. Kavanagh, died unmarried and without issue. By holographic will, he directed that his residual estate be held in trust, and that, out of income, monthly payments in a specified amount be made to his father for life and, in addition, annual sums be paid to the testator’s brother and three sisters for a period not to exceed 20 years. The will further provided in paragraphs nineteenth and twentieth that, upon the father’s death, and upon termination of the annuity payments to the testator’s brother and sisters at the end of the 20-year period, or upon the death of these recipients prior thereto, the entire estate then remaining would be distributed for certain varied charitable purposes.[7] The relief sought by plaintiff, a relative *249 of the testator, was for the following: (1) a declaration that the deceased died intestate as to the income from his residuary-estate; (2) a declaration that paragraphs nineteenth and twentieth of his will were void; (3) a direction that the trustee render its final account; and (4) a determination of the proportionate distribution to be made to the parties in interest in the testator’s estate.
The court denied, in its entirety, the relief prayed for. In the first part of the opinion, the court’s attention was focused on the question of whether the interests of the residuary charitable beneficiaries were vested or contingent. In this regard, it was appellants’ contention that the disputed paragraphs of the will, by providing for a subsequent division of the remaining principal of the estate, made the gift to the charities a future one, and that the gift was therefore invalid. The court, while recognizing the existence of a rule that would hold illegal a gift to charity made upon a contingent event the happening of which is a condition precedent to the gift (pp. 74r-75 [see, also, Gray, Rule Against Perpetuities, §§ 605, 606, p. 580]), refused to apply this precept to the instrument before it, and, quoting from the earlier New Jersey case of Post v. Herbert’s Executors (27 N. J. Eq. 540, 543, 544 [1876]), based its reasoning upon the established principle that (p. 75): “ [I]f, upon the whole will, it appears that the future gift is only postponed to let in some other interest, or, as the court has commonly expressed it, for the benefit of the estate, the same reasoning [as would vitiate a charitable bequest founded on the occurrence of a contingent event] has never been applied to the case. The interest is vested notwithstanding, although the enjoyment is postponed.” The court then reached the conclusion that (p. 75): “ In the present ease there is no doubt that the testator’s words vested the residuary estate in the trustee for the purposes expressed in paragraph Twentieth of his will, at the time of his death, subject to postponement of enjoyment for the convenience of *250 his estate, namely, to permit the ‘ letting in ’ of the interests of the annuitants to protect the full payment of their annuities.” (Emphasis supplied.)
In Litcher, no specified disposition was made in the will regarding the accrued income of the trust, but the court was of the view that the testator intended the accumulations of income to be added to and become part of the corpus, stating (pp. 77-78) that: ‘ ‘ There being no directions in a will for accumulation of income to increase the corpus of a specific fund, the income accruing is undisposed of and falls into the residue; ‘ a residuary bequest of personal estate carries, not only everything not in terms disposed of, but everything that in the event turns out not to be well disposed of [citing cases]. * * *’ We thus find a testamentary scheme to establish the residuary estate as an estate for accumulation for a period of twenty years (or the life of the testator’s father) at most, but vested in the trustee on testator’s death for the residuary purposes.” “ What was the nature of these residuary purposes? They were all charitable.”
In the case at bar, there was no testamentary direction for accumulation, but there was express provision concerning the disposition of the surplus income: “ Should there be a balance of said income remaining in any year, after carrying out the above provisions [of furnishing support to a specified class of incurably ill or needy relatives living at the time of testatrix’s decease], then said organization [the plaintiff, herein] is empowered to use said balance in any following year for the general purposes for which it was formed.”
True, I have (in section VI of this opinion) held that the area of the charities involved in the plaintiff’s “ general purposes ” is not necessarily that of sustenance for the sick and the indigent. Those “ general purposes ” are charitable nevertheless. I therefore do not agree with the submission of the plaintiff and the guardian ad litem to the effect that, if the will in the case at bar is considered to have created a trust in the conventional sense, it would be a private trust for the benefit of relatives, subject to the Rule Against Perpetuities, and therefore invalid as being violative thereof. Nor do I agree with the thesis suggested by the plaintiff, that, by the first paragraph of article Tenth of the will, the testatrix made an outright gift to the Ministers Board without any duty to such relatives who would come within the ambit of the assistance provided for by the testatrix in the second paragraph of article Tenth, and that there remain only the plaintiff’s integrity and long experience in caring for the needs of the elderly and needy and a gratuitous *251 or voluntary desire on its part to carry out the wishes of the testatrix (referred to in section II, supra, and section XII, infra, as the “ collateral power ” concept).
I am rather of the opinion that, by this article, a charitable trust was intended in which there was an immediate vesting of the gift in the plaintiff as trustee thereof, subject to a fiduciary charge against the income (albeit a discretionary one, in its application) for the benefit of such infirm or needy relatives as are described in the second paragraph of the bequest. This approach has the support not only of the leading commentaries and texts on the subject, but also, as I read it, of the views set forth in the case of Litcher v. Trust Co. of N. J. (11 N. J. 64 [1952], supra).
Professor Bogert presents the following pertinent formulation in his Trusts and Trustees (2d ed.): “A donor may give a limited interest to or for his friends or relatives or other non-charitable purposes, followed by a provision that in a certain event the property given is to go to or for charity. * * * [I]f this secondary gift is vested in interest at once, and the only postponement is as to possession and direct enjoyment, there is no problem of the rule against remoteness.” (§ 345, pp. 749-750.)
The Restatement of the Law of Trusts 2d (§ 401, par. [2]) states that: “If it is provided by the terms of the trust that a charitable trust shall not arise until the happening of a certain event, the charitable trust will arise when the event happens, unless the provision is invalid.” and the following comment “ j ” is found thereon (p. 315): “ If the settlor manifests an intention that the charitable trust shall arise immediately, the trust is valid, even though he directs that the property shall not be used for the charitable purpose until the happening of an event which may not occur within the period of the rule against perpetuities. In such a case the happening of the event is not a condition precedent, but there is an immediate gift to charity with performance delayed.”
Professor Gray says: “If the Court * * * can see an intention to make an unconditional gift to charity (and the court is very keen-sighted to discover this intention), then the gift will be regarded as immediate, not subject to any condition precedent, and therefore not within the scope of the Rule against Perpetuities.” (Gray, Rule Against Perpetuities, § 607, p. 581.)
Professor Bogert further says that: “ If the settlor gives a remainder or executory interest to trustees for charity, and it is provided that the interest is to vest in ownership at the time *252 when the trust instrument takes effect, or at a later time which is within the period of the rule, it is immaterial how long it will be before the trustees will come into possession of the realty or personalty involved. Thus, a settlor may give a ninety-nine year estate in his property to his widow, and give the remainder following that ninety-nine year estate to present trustees for religious charities. Here the charitable trust begins at once, it is vested in interest from the settlor’s death; but the subject-matter of the trust is a future estate. The fact that the charitable trustees will not come into possession of any realty or personalty for ninety-nine years raises no problem of the rule against remoteness or any form of the Rule against Perpetuities.” (Op. cit., § 343.)
In the case at bar, the charitable trust began and was vested in interest at the time of the testatrix’s death. The trustee came into immediate possession of the corpus. The surplus annual income therefrom is retained by the trustee; and, when the time comes when there are no more persons connected by blood with the McKays within the 10th degree, who were living at the time of the demise of the testatrix, then the entire income is to be applied by the trustee to the objects of the trustee, as provided in the will.
And Professor Scott says: “ If there is an immediate vested gift to charity, however, the gift is valid although it is provided that the property shall not be applied to the charitable purposes until the happening of an event which may not occur within the period of the rule against perpetuities. The question in each case is whether the gift to charity is subject to a condition precedent or whether there is an immediate unconditional gift to charity. Although the particular method of applying the property to charitable purposes may be subject to a condition precedent which may not happen within the period of the rule against perpetuities, the charitable trust does not fail if the testator had a general unconditional intention to devote the property to charitable purposes.” (4 Scott, Trusts [3d ed., 1967], § 401.8, pp. 3162-3163.)
And now, returning to the most analogous pronouncements of the highest court of the State of New Jersey, I note that in Litcher (supra), it is concluded, in respect of the accumulated residual bequest there involved that the bequest, being a charitable gift, did not violate the Rule Against Perpetuities, first, because that rule is “ directed solely against unlawful postponement of the vesting of estates ” in that “ it is the ‘ uncertainty of the right of enjoyment and not the uncertainty of actual *253 enjoyment ’ that postpones the vesting of an estate in remainder ” (emphasis supplied); and second, because “ gifts to charities ”, once properly vested, “ are not subject to the rule against perpetuities ” (p. 80). Whether such vesting is indefeasible or whether it is subject to the possibility of reverter or a resulting trust under the second paragraph of the article will depend upon the intention of the testatrix in that regard and the construction to be given that provision. However, since that is an issue not presently before me, all I need say, in passing, is that, even in those jurisdictions where such possible interests may arise and are recognized, they are not affected by the Rule Against Perpetuities (Gray, op. cit., §§ 41.1, pp. 46-47; Leach, Perpetuities in a Nutshell, 51 Harv. L. Rev. 638, 647).
(VHI)
The contesting defendants' argue that, when the testatrix attempted to spell out a class of relatives whom she desired to assist, it was done (to use the phrase in the defendants’ brief) 1 ‘ for a very long period of time ”, in “an ever-widening and embracing category ’ ’, and therefore that the creation of such a trust violates the Rule Against Perpetuities.[8] Professor Leach has made a short and effective response to this contention: “ The Rule against Perpetuities is a rule invalidating interests which vest too remotely. Indeed, it is often called the rule against remoteness of vesting. It is not a rule invalidating interests which last too long ” (51 Harv. L. Rev. 638, 639). “ The metaphysical common-law notion that a future estate can vest in interest before it vests in possession is incorporated into the Rule against Perpetuities. A remainder complies with the requirements of the Rule as soon as it becomes vested, regardless of when it becomes possessory.” (Id. p. 647). And Professor Gray says: “ A vested interest is not subject to the Rule against Perpetuities.” (Op. cit., § 205, p. 194.) By the first paragraph of article Tenth the testatrix left the residue of her estate to the plaintiff, a corporation then in existence; and the bequest, as I have held, became vested immediately upon her death, although full enjoyment of all of the income was postponed.
The plaintiff cites the famous English case of Matter of Villar ([1929] 1 Ch. 243). There, the testator had given property in trust for the benefit of certain of his descendants. The prescribed limitation was for “ 20 years from the day of the *254 death of the last survivor of all the lineal descendants of Her Late Majesty Queen Victoria who shall be living at the time of my death ’ The court held that the trust and gift over to the testator’s descendants were valid, stating: “ It is true that the number [of measuring lives] is considerable, amounting to 120 or 130, but they can be ascertained at the present time. It follows that the testator has selected a period of restriction during which division of the capital is postponed, which, inconvenient though it may be, offends no canon of law at the present time.” (p. 249).
The plaintiff invokes the aid of Villar by seeking to distinguish it. The plaintiff argues that, in the instant case, the relatives of the testatrix are not ascertainable (as were the royalty listed in Burke on Peerage) and that the extent of the class in the case at bar is vastly greater than in Villar, and that if those facts had obtained in respect of the relatives of Queen Victoria the court that decided Villar would clearly have held the bequest void. Of that, I am, of course, not certain.[9]
The plaintiff contends that the evidence in the case at bar shows that no one can ascertain all members of the class of relatives of the testatrix and her husband to the 10th degree. In Villar, there was testimony by a former editor of Burke on Peerage that it might be “ very difficult and very probably impossible ” (another version describes the testimony as “ extremely difficult, if not impossible ”) to prove at a future time who the last survivor of the lineal descendants of Queen Victoria was *255 living at the time of testator’s death (24 Ill. L. Bev. 727). The testator in Villar died in 1926. The will was executed in 1921. There were 120 descendants of the Queen. They had to he located in England, Germany, Bussia, Sweden, Denmark, Norway, Spain, Greece, Jugoslavia and Bumania. Many of them had thus become scattered over the entire continent of Europe, and might even had gone much farther afield. It was not11 certain ” whether the late Tsaritsa’s children were living, and because of World War I, many of the continental descendants were threatened with penury and obscurity rendering any future tracing of them “ extremely difficult if not impossible ” (1 Ch. 243, 245).
Therefore, I might ask, what is the nature of the prerequisite ‘ ‘ certainty ’ ’ ? Am I to assume that, over a period which could approximate as many as 100 years, the world would remain “certain” enough so that the identity of the “last survivor of all the lineal descendants of Her Late Majesty Queen Victoria ” living in 1926 could be ascertained or located with “ certainty ” ? A reader of history and of current events in that year would have responded in the negative; and, with the advent of fascism, nazism and communism in Europe and the territorial and political changes that preceded and followed World War II, hindsight supports that view.
On the other hand, the class of members established by the testatrix in the case at bar is not used as measuring lives. To benefit under the terms of the will, the relatives need to do no more than to come forward and show incurable illness or economic need. (See Matter of Butler, 137 N. J. Eq. 48, 49, supra.) The determination as to the identity of an appropriate beneficiary and the amount to be paid to him are left to the discretion of the plaintiff. What is required of the plaintiff is that, in the exercise of that discretion, it act in good faith and carry out the wishes of the testatrix; that it not place its own interests before that of its fiduciary obligation in that regard, and, juridically expressed, that there not be an abuse of the discretion granted it. To the extent that the plaintiff carries out the testatrix’s intention, its actions will be upheld. To the extent that the plaintiff does not, there is appropriate equitable remedy. It is this element that gives “ certainty ” to the bequest herein, both in respect of the identification and selection of beneficiary as well as in the implementation of the testamentary mandate. (See sections X and XII hereof, infra).
Therefore, the distinction urged by the plaintiff is of little aid in ascertaining, establishing or applying the applicable legal precept.
*256 But it must be said that I perceive material distinctions, overlooked by the plaintiff, between the Villar ease and the instant one. In Villar, the problem under examination by the court was that of remoteness or uncertainty, in terms of vesting of the corpus of the estate. Here, the corpus vested in the plaintiff upon the testatrix’s death. Moreover, the plaintiff seems to me to have confused the situation — crucial in any consideration of the Rule Against Perpetuities — in which persons are named as “measuring lives ” only with one where the persons mentioned have an interest in the estate and whose lives as such are of no relevance in terms of vesting. In Villar, the descendants of the Queen were used only to determine a period of time; they had no beneficial interest in the estate under consideration. Here, the relatives favored by the testatrix are not used as measuring lives, and they do or may have an interest in her estate.
In any event, were I to accept the view that the persons connected by blood to the testatrix and her husband within the 10th degree who were living at the time of her death constitute the measuring lives during which vesting was postponed, I would still conclude that, applying the law of New Jersey, there was no violation of the Rule Against Perpetuities.
The New Jersey perpetuity period is that which existed at common law — lives in being plus 21 years. This was observed by the New Jersey 'Court of Errors and Appeals in Fischer v. Stuart (104 N. J. L. 78, 79 [1927]), wherein it is stated: “ This state * * * has received and perpetuated the common law against perpetuities in its original form, without change or modification * * * [T]he term is measured by the life or lives of a person or persons in being, at the time of the creation of the interest, and twenty-one years thereafter.”[10] To the same effect is Litcher v. Trust Co. of N. J. (18 N. J. Super. 101, 109, affd. 11 N. J. 64 [1952], supra): “ That rule requires that all interests must vest, if at all, within a term measured by the life or lives of a person or persons in being at the time of the creation of the interest and 21 years thereafter. Gray, Perpetuities (4th ed.) 201; McGill v. Trust Co. of N. J., 94 N. J. Eq. 657 (Ch. 1923), affirmed 96 N. J. Eq. 331 (E. & A. 1924).” As Professor Gray expressed it: “ The contingency may be post *257 poned for any number of lives, provided they are all in being when the contingent interest is created.” (Gray, op. ait., § 216, p. 217.)
(IX)
It can be argued with seeming cogency that, by the second paragraph of 'article Tenth taken alone, the testatrix attempted to create a private trust for the benefit of those relatives designated therein. While the contesting defendants concede that the first paragraph of article Tenth (were it standing alone) would have created a valid charitable trust, they urge that the language in the second paragraph (wherein the testatrix expresses her desire that the income £ £ first ” be used £ £ for the alleviation of suffering from arthritic or other illnesses, and/or for the comfortable maintenance and support of any person or persons living at the time of [the testatrix’s] decease, and who may be connected by blood [but not beyond the tenth degree] ” with either her or her husband) is not a use for a charitable purpose. I agree. It has been held that ££ a trust for the benefit of * * * relatives is not a charitable trust ” (Matter of Butler, 137 N. J. Eq. 48, 49, affd. 137 N. J. Eq. 457, supra). And, if I may rely in this respect upon the tax case of Thayer-Martin (118 N. J. L. 465, 468, supra), the Supreme Court of the State of New Jersey said of this very provision: ££ It seems fundamental that there is nothing legally charitable or benevolent * * * in providing by will for [one’s] relatives by blood or marriage ”.
However, article 10 cannot be evaluated on a piece-meal basis. It must be construed in its totality in order to comprehend its meaning and thus be enabled to give the fullest effect to the testatrix’s intention. Having held that the corpus of the trust vested1 in the plaintiff at the time of the testatrix’s death, what are the status and effect of the bequest for the benfit of those relatives therein provided?
(X)
It is generally held that, in order to create a valid trust, there must be a designation of beneficiaries, or a class of beneficiaries, which must be an ascertainable class, and the designation must he made with reasonable certainty so as to be capable of identification. As succinctly expressed in Bogert, Trusts and Trustees (:§ 162, p. 109 [2d ed., 1965]): “ A class must be certain as to membership.” Whether or not the relatives favored by the testatrix can be ascertained with sufficient certainty so as to *258 permit appropriate cognizance of the cestuis que trustent and the proper functioning and administration of the trust in accordance with the testatrix’s intention is a shoal necessitating some efforts of studied navigation.
In the case at har there are 125 known relatives specifically named as defendants herein, and ‘1 unknown relatives of James Pickens McKay'or Maude S. W. McKay, living on September 12, 1932, who are connected by blood (but not beyond the 10th degree) ”, also generally named as defendants, all possible beneficiaries. At the trial, the plaintiff presented as a witness an expert on the subject of genealogy, who had examined the will. He prepared, after investigation, a genealogical chart attached to the complaint. His purpose was to determine whether the beneficiaries constituted an ascertainable class. Based upon his study, he expressed an opinion that this class of beneficiaries did not constitute an ascertainable group of persons. There was no conflicting proof. Does this mean, as suggested by the plaintiff, that the New Jersey courts would vitiate the trust! I think not.
In presenting this contention, the plaintiff fails to take into account the machinery established in the will for selection among the stated class. In section 120 of the Restatement of the Law of Trusts 2d, it is recognized that “ The members of a definite class of persons can be the beneficiaries of a trust.” In Comment “a” to that section, it is stated that “A class is definite, for example, where it includes only * * * the children or grandchildren of nephews or nieces or issue or descendants or next of kin or heirs of a designated person. ’ ’
Then section 121 of the Restatement expresses the rule that: “ There can be a trust of which the beneficiaries are the relatives of a designated person among whom the trustee is authorized to select who shall take and in what proportions.” The American Law Institute comment explains this rule as follows (p. 256): “ A trust for the benefit of the relatives of a designated person * * * does not fail if the trustee has power to select who among them shall take and in what proportions. In such case the trustee may select any member or members of the class in accordance with the terms of the trust, whether or not they are next of kin of the designated person.” And the following amplification is found in Bogert (op. cit., vol. 2, § 161, pp. 105-106): u The beneficiary must be so well described that a court of equity can be sure that a complainant calling for the enforcement of the trust is a *259 potential or actual beneficiary under it. This identification * * * may * * * be by way of reference to a family kinship ”.
I have not been furnished with any precedents squarely in point in New Jersey and I have not been able to find any on my own. In Litcher v. Trust Co. of N. J. (11 N. J. 64 [1952]) hereinbefore discussed in other aspects of this case, the court said (p. 81) that “ The mere fact that the powers of the trustee and its advisory committee are in a sense discretionary with respect to the particular distribution to be effected does not invalidate the trust.” On the contrary (as is indicated in an earlier New Jersey opinion by way of dictum, it is true, so far as the decision in the case at bar is concerned) the discretion vested in the plaintiff is a testamentary power which supports a holding that the present bequest is a valid and enforceable trust.
Although not a case involving a will or the construction of a will, reference may, I think, appropriately be made at this point to Bennett v. Van Riper (47 N. J. Eq. 563 [1890]). It is concerned with the meaning of the term ‘1 related to ” in article 1 of the Belief Fund Law of New Jersey. The Court of Errors and Appeals, by language in its opinion, suggests that it would hold as valid a bequest in a will for the benefit of relatives of the testator, and it also indicates that the term ‘1 relatives ” need not be limited to persons who are the testator’s next of kin, if the testator authorized a power of selection from such a group of relatives. This is stated (p. 565): “I think there was error in confining the meaning of this term ‘ related to ’ within the narrow limit which has been adopted in the construction of wills and in some statutes. From the indefinite extent of the word ‘ relations, ’ it has been found necessary to limit it in these cases by confining it to the next of kin under the statute of distributions. Smith v. Campbell, 19 Ves. 400; Bennett v. Honeywood, Amb. 708. This includes relations by blood, and not by affinity, and is applied unless the testator has subjoined to the gift expressions declaratory of an intention to include them. 2 Jarm. Wills 666; Esty v. Clark, 101 Mass. 36. In Bacon on Beneficial Societies § 260 it is said: 1 It has long been settled that the word ‘ relatives, ’ when used in a will or statute, includes those persons who are next of kin under the statute of distributions; unless from the nature of the bequest, or from the testator having authorized a power of selection, a different construction is allowed. ’ Mahon v. Savage, 1 Sch. & L. 111; cases in notes to Harding v. Glyn (1 Atk. 469), *260 3 White & T. Lead. Cas. 810; Drew v. Wakefield, 54 Me. 291. In this certificate there is a power of selection given, not by will, but by contract, between the parties. There are, therefore, qualifications to this rule of construction, even in cases of wills, when a contrary intention is manifested. ’ ’
The courts in Ontario and New Hampshire- — which, like New Jersey’s, fundamentally follow the common law — have had occasion to consider this issue and I shall refer to some decisions in those jurisdictions.
In Matter of Cawthrope (26 Ont. Week. Rep. 762; 3 A. L. R. 300 [1914]) the testatrix bequeathed the residue of her estate to “ those of my relations who are needy, in such amounts * # . * as my executors see fit in their discretion.” The court upheld the bequest.
In the case of Goodale v. Mooney (60 N. H. 528 [1881]) the clause of the testator’s will there involved read as follows: ‘ ‘ I place the remainder of my property in the hands of my executors, to be distributed by them after my decease, among my relatives, and for benevolent objects, in such sums as in their judgment shall be for the best.” The court held this to be a valid bequest in trust, stating (p. 533): “Is the trust sufficiently definite to be carried into effect? The rule for determining whether the words of a will create a trust or not is,— first, the words must be imperative; second, the subject must be certain; and thirdly, the object must be as certain as the subject. Wright v. Atkyns, 1 T. & R. 157; Wood v. Cox, 2 Myl. & Cr. 684; Pope v. Pope, 10 Sim. 1; Knight v. Knight, 3 Beav. 148; 1 Per. Tr., s. 114 n. In this case these conditions are complied with. The words are imperative. The testator places his property in the hands of his executors with directions to distribute the same. The subject is the remainder of his estate, and is certain. The object, so far as his relatives are made the distributees, is certain.”
To the same effect is Matter of Lawrence (104 N. H. 457 [1963]), wherein the testatrix’s will contained 39 specific bequests of money and personal property to sisters, nieces, nephews, grandnieces, grandnephews, nonrelatives and charities. The residuary clause (41st) of the will provided that: £ £ All the rest and residue of my estate * * * I give, devise and bequeath to such relatives of mine and in such amounts as my Executor or Executrix may decide in his or her sole discretion ”.[11] The question presented to the court was whether, in pursuance of this clause, only those relatives who would take *261 under the descent and distribution statutes of New Hampshire could be considered as beneficiaries; or whether grandnieces and grandnephews could qualify as beneficiaries even though their parents were still living. The court held that grandnieces and grandnephews are relatives of the testatrix, and are entitled to benefit under the residuary clause of her will, whether their parents are living or not, stating (p. 459): “At the outset, it appears that the effect of the intention of the testatrix was to create a trust for the benefit of her relatives under the 41st clause of the will. Goodale v. Mooney, 60 N. H. 528; Restatement (Second) Trusts, s. 2h. Since early times, provisions such as we are asked to rule upon have been held valid in this state. Varrell v. Wendell, 20 N. H. 431; Goodale v. Mooney, 60 N. H. 528; see Clark v. Campbell, 82 N. H. 281, 133 A. 166, 45 A. L. R. 1433.”
In the tax case involving the instant trust, decided by the Supreme Court of New Jersey, and hereinbefore discussed (see section TV, supra) in respect of another angle of its decision (Ministers and Missionaries Benefit Bd. of Northern Baptist Convention v. Thayer-Martin, 118 N. J. L. 465, 468), the court found that, under article Tenth of the will, the plaintiff ‘ ‘ is made a trustee for an unascertained but ascertainable group of living relatives of testatrix or her husband, who are appointed as beneficiaries for life of some share in the income of the fund to be determined by the trustee; any surplus to be devoted to the charter purposes of the organization.”
I hold that — were the issue presented to the highest Court of New Jersey — that tribunal would decide (in consonance with the principles expressed by text writer, law institute, decisions in other jurisdictions, and its own dicta) that the trust in the case at bar is valid, because, as I have outlined in section VIII, supra, there is a definite class (those related to the testatrix or her husband to the 10th degree) and the prospective beneficiaries are identifiable by virtue of the fact that relatives may come forward and present their respective claims to the plaintiff and because of the discretion and power of selection accorded the plaintiff. The further fact that the plaintiff also has a beneficial interest in the trust income will not prevent the trust from coming into being — for (as will be seen in section XII of this decision, infra) it is incumbent upon the plaintiff, as trustee, to act under the trust as a fiduciary, with primary loyalty and devotion to the interests of the relatives who are the beneficiaries under the will. Moreover, there is no requirement that payment be made in any spe *262 cified amount or for a given period of time other than with respect to the annual need and income, and the trust corpus is not involved in the distribution process.
Among the cases relied on by the plaintiff is Dalton v. White (129 F. 2d 65 [U. S. C. A., D. C., 1942]). There, the bequest provided for $1,000 to each of testatrix’s cousins living at the time of her death ‘ ‘ irrespective of the remoteness of their relationship and irrespective of whether his or her parent cousin may be living ” (p. 56). Over 1,000 persons intervened in the litigation, and about 2,000 individuals living in various places filed claims. In affirming the District Court’s holding that the bequest was incapable of execution, and therefore void, the United States Court of Appeals said: “We cannot infer that [the testatrix] meant to make bequests to all the thousands of unknown persons who were distantly related to her. That construction would defeat intentions which she plainly expressed in other clauses of the will. It would exhaust the estate, and therefore prevent payment of more than a fractional part of the bequests to named friends, relatives and religious organizations, which she made [in other clauses of her will]. It would prevent the persons whom she undertook to benefit by her residuary clause from receiving anything under it. By ‘ my cousins ’ she does not appear to-have meant any definite category of persons. We are not at liberty to guess what individuals, if any, she had in mind. Since [this] clause can be given no definite meaning, it is void for uncertainty. ’ ’
Were there here a mandatory requirement calling for a division of the trust corpus or income in specified amounts, then I would' agree with the plaintiff that, under the authority cited by it, the recipient thereof must be definitely ascertained at the time of the death of the testator (2 Scott, op. cit., 913; cf. Matter of Gulbenkian’s Settlement Trusts [1967], 3 All E. R. 15, 18 [Ct. of Appeal], supra, affd. sub nom. Whishow v. Stephens [1968] 3 W. L. R. 1127 [House of Lords]). However, where broad discretion as to the recipient, amount and the frequency of payment reposes in the trustee (as in the case at bar) — and there is no violation of the Rule Against Perpetuities — the situation is different.
There are thus certain obvious distinctions that render the Dalton case inapplicable as authority for making any meaningful disposition here. In Dalton, the bequests are mandatory and in specific amount; here, the bequests to relatives are discretionary both as to the amount and the recipients thereof. In Dalton, the beneficiaries were not restricted to any degree of consanguinity; here, there is a limitation to the 10th degree. *263 In Dalton, the only proof presumably required would be such as would establish the claimant as a “ cousin ” of the testatrix, no matter how remote; here, the manner of proof is left to the plaintiff’s discretion within the criteria set forth in the bequest, which is the alleviation of suffering from incurable disease or need among members of the class. Finally, in Dalton, implementation of the contested clause would have exhausted the estate and frustrated the testatrix’s intention with respect to the other clauses in her will; whereas in the instant case, the testamentary scheme set forth in the entire will, as well as in the contested article Tenth, is amenable to total effectuation in accordance with the fullest extent of the testatrix’s intention.
In this connection, the plaintiff quotes from the opinion in Henderson v. Henderson (77 N. J. Eq. 317, 320 [1910]): “ Where a gift is made to i relations ’, courts, from the necessity of the case, give the word an artificial meaning in order to give it any effect at all. They confine it to relatives entitled under the statute of distribution and to persons who have married relatives so entitled.” And then, the plaintiff argues that, in New Jersey, “ if a gift to 1 relatives ’ cannot be construed as a gift to ‘ next of kin, ’ the gift cannot be given effect. ’ ’ I do not go along with this contention. (The applicable provision of the statute of distribution, which would prescribe the limits of a gift made to ‘ ‘ relations ’ ’, within the meaning of Henderson (supra) is 3A New Jersey Statutes Annotated, Administration of Estates — Decedents and Others, ch. 4, pp. 382-383. The provision, in its pertinent part, is set forth in a footnote.[12]) While it is true that, under this statute, the representatives of ancestors nearest in relationship to the decedent take to the exclusion of the more remote kindred, there is no limitation as to how distant a degree the nearest relative may be. If he is the closest relative, he will take, under the statute, no matter how remote, even beyond the 10th degree.[13] Therefore, I am of the view that, if a relative beyond the 10th degree of consanguinity to the decedent can qualify under the New Jersey statute of distribution (however uncommon that eventuality), *264 the present bequest — made by the testatrix herein to the relatives within the 10th degree of herself and her husband who were living at the time of her death — needs no artificial meaning or construction to validate it.
Moreover, I do not regard Henderson, any more than I do Dalton, authority in respect of the matter before me, for the ‘ ‘ uncertainty ’ ’ of distribution alleged by the plaintiff to be relevant in both of these cases does not obtain in respect of the bequest to relatives under the second paragraph of article Tenth. Upon a superficial reading of that paragraph it may be thought that such beneficiaries are unascertained and unascertainable; but in the light of the discussion in sections X (supra) and XII (infra) of this opinion, the contrary is clearly the case.
(XI)
There remain for consideration three aspects of the objections interposed by the three contesting defendants to the plaintiff’s administration of the trust. First, as it relates to the years (about 35 in number) prior to 1967; second., the allowances or (lack of them) granted since 1967 and 1968; and third, the rulings of the trustee in respect of the period in the future.
The defendants Helen McKay Pasko and Joyce Helen Pasko have never filed an application for aid. The defendant Donald White McKay did not apply at any time prior to June, 1967. As to the period prior thereto, these defendants claim that their respective incomes for those years were not sufficient for their “ comfortable maintenance and support ”, and demand an amount which would have enabled each of them to live comfortably during that time.
The defendants’ claim as to this is lacking in merit, since none of the defendants has ever applied for assistance during that period. I agree with the submission in that regard of the guardian ad litem, who pointed out that: “ The will does not provide for ‘ past needs ’. And it specifically provides that a balance in any one year should be devoted to the general purposes of the plaintiff for the following year. It would impose an intolerable, if not impossible, burden upon the plaintiff to ask it to go back to past years and ascertain what it should have done then. And apart from depleting funds, it would be unfair to future applicants who may not now be aware of the provisions of the will or who may not now be asking for assistance but who may do so in the future.”
The defendant Donald McKay also objects, as I have said, to the sufficiency of the amount of the award made by the plaintiff to him for the years 1967 and 1968.
*265 On June 15, 1967, Donald McKay filed his first application with the plaintiff for aid, claiming that he was a nephew of James Pickens McKay, that he owned a home valued at $25,900 (with a $10,000 mortgage thereon), that his annual income had been $9,150, and that his wife’s annual income was $3,913.12; that, in November, 1967, due to two heart attacks, he had retired, and that his income had theréby been reduced to $381 a month ($4,572 per annum).
Through his attorney, Donald McKay stated, in a letter to the plaintiff dated November 30,1967, that, because of the reduction in his annual income from $9,150 to $4,572, “it will be virtually impossible for Mr. and Mrs. McKay to maintain any semblance of their former standard of living and make ends meet”. The plaintiff trustee, through its subcommittee, examined McKay’s request for aid, and, by letter dated January 4, 1968, informed him that it would pay $600 toward his unreimbursed medical expenses of $700.36, which amount was to be immediately paid from 1967 income generated from the trust fund. The plaintiff also approved a grant of $400 for the year 1968 from 1968 income, and advised the defendant that, in accordance with the plaintiff’s usual procedure, the matter would be reviewed toward the end of 1968 to determine what could be done for the year 1969. McKay was assured ‘ ‘ that the Committee will give sympathetic consideration to any emergency need which may arise ”. McKay contends that these allowances were not sufficient for his ‘ ‘ comfortable maintenance and support ’ ’.
The plaintiff counters, in its post-trial brief, that the Donald McKay family income for the year 1967 was reduced to approximately $12,600, which does not include the $600 which he received from the trust fund, and that if this amount is added to his 1967 income, the resulting income for that year was more than it was before he had been compelled to retire.
As to the 1968 situation, McKay and his wife received an income of $8,485.12, plus the grant from the trust of $400. The plaintiff states: “This income of almost $8,900 is a high income for a retired couple. The most recent U. ¡3. Department of Labor Bulletin available at the time Donald W. McKay’s application was considered showed that a moderate standard of income for retired couple in the New York metropolitan area was $4,341.00.”
I do not concur that McKay’s income is truly a “ high ” one. But the critical legal circumstance is that he is mistaken as to the purpose and function of the trust established by article *266 Tenth — and that is the controlling element as far as I am concerned. It was not intended by the testatrix that the income from the trust would be applied to enable relatives to live according to the standard to which they had become accustomed. Nor was it her intention that the defendant McKay was to receive an award sufficient to make his annual intake equivalent to his preretirement income. These are not the criteria established in the will by which the trustee was to be governed in making awards. By the terms of the bequest, the plaintiff trustee is given sole discretion ‘ ‘ in the expenditure of said income both as to amount and beneficiary, bearing in mind always that the care of incurables, and particularly arthritics * * * [was] nearest to * * * [the testatrix’s] heart ”. It is to that end that grants of aid are to be made by the plaintiff. They should be based solely upon the need of the particular applicant, and need not reflect an amount which would enable the applicant to live in acordance with the same standard by which he was living in the past.
Based upon an analysis of the proof in the case at bar, and taking into consideration the intention of the testatrix, and the fact that the will herein gives to the plaintiff trustee the sole discretion to determine both the amount of a grant and the qualifications of the beneficiary, I believe that the awards to the defendant were reasonable and sufficient under all of the circumstances. The plaintiff appears to have given careful consideration to the defendant’s application for assistance. And it informed the defendant that, if the need arose, further applications could be made and would be considered. The trustee was obligated to review the financial situation and personal health of the defendant McKay and award him an amount, if any, which was necessary to his comfortable maintenance and support. This the plaintiff trustee did. There is no evidence that the trustee has violated the obligation of trust imposed upon it by the will or that it has failed to exercise its judgment honestly and in good faith.
“ If [as in the case at bar] the trustee’s power to choose beneficiaries is qualified, then he must use his discretion with a view to carry out the purposes of the settlor as shown in the qualifying clauses. For example, the trustee may be given power to make payments of capital or income to such of the descendents of the testator as are in need and to exclude those who do not require aid. If the trustee makes an honest decision with respect to the application of this standard, based on investigation, the court will not interfere with his action. *267 It would, require proof of an ‘ abuse ’ of discretion in order to cause the court to upset the choice of the trustee ”. (Bogert, op. cit., '§ 162, p. 112.)
The defendant’s claim to additional awards for the years 1967 and 1968 lacks merit and is rejected.
McKay’s final objection relates to the years after 1968, and his claim is that he should receive an amount now for those years. This contention has no merit. If sustained, it would seriously hinder the plaintiff in the administration of the trust. There is possibility and danger of depletion of the trust fund if the principle were established that an amount were to be awarded for the future. Also, the defendant cannot possibly establish at the present time that he will be in need of assistance within the terms of article Tenth. Furthermore, the testament does not contemplate an award for future years. "What was anticipated was an allowance made to relatives who came within the designated class of beneficiaries for the years in which such relatives had applied to the plaintiff for aid. It was not the testatrix’s intention that the entire income from the trust would be devoted to relatives, for, at the end of article Tenth, there appears the following provision: ‘ ‘ Should there be a balance of said income remaining in any year, after carrying out the above provisions, then said organization [the plaintiff] is empowered to use said balance in any following year for the general purposes for which it was formed.”
This is what the present plaintiff did with the trust’s surplus income from 1933 (the year in which the trust was established) through 1967 (the year which immediately precedes the instant challenge made to the trust by certain of the defendants).
Initially, the corpus of the trust amounted to $176,377.87. The principal at the time of the institution of this action was $300,000. The total income received from this fund beginning with the year 1933 and ending 1967 was $332,792.32. Of this sum, $150,333.55 was paid over to the relatives (44, in varying amounts, out of 125 known possible beneficiaries). The balance of the income, $182,458.37, was retained by the plaintiff for use for its general purposes, as provided in the will.
(xn)
I now turn my attention to another concept, advanced by Professor Casner when discussing certain tax implications involved in “ Trusts Under Which Beneficiaries Are To Be Determined ” (see 25 Record of Assn. of Bar of City of N. Y., 62, 63 [Feb., 1970]) as follows: ‘ ‘ Trusts which contain appro *268 priate powers that enable beneficiaries to be determined from time to time are adaptable to meet the changing picture of the trust property and of beneficiary needs.”
This thought is quite applicable to the very trust now under consideration. The flexibility inherent in this approach and, indeed, in article Tenth of the present will, undoubtedly makes it more feasible to meet trust problems than any fixed and rigid plan.
I cannot find any helpful precedents projecting this view in any of the jurisdictions in the United States, but there is an English ease which offers some assistance. (Matter of Sayer Trust, 3 All E. R. 600, Ch. Div. [1956].) The settlor there had established a trust under which the trustees, consisting of a committee of management, were granted discretionary power to make payments, where it decided that assistance was merited, out of the fund, by way of annuity for life or for a term of years or other period or lump sum grants in each individual case to the following persons: to present employees; to former employees; to infant children or other infant dependents of such employees or ex-employees; and to other dependent relatives of such, employees or ex-employees, including their widows. It appeared from the evidence that, due to a large labor turnover, the company had been unable to keep a record of its employees. Upon resolving the validity of this aspect of the trust, the court held that the power to distribute the income of the fund was not void for uncertainty because, although the whole class of beneficiaries could not be ascertained at any given time, it was not impossible in any given case for the committee or the court to decide whether any person was a ‘ ‘ dependent ” or a “ dependent relative ” or an “ employee ’ ’ or 1 ‘ ex-employee ’ ’ of the company. In the absence of any exercise of the power by the trustees, the court held that the law would imply a resulting trust in favor of the settlor.
Similarly, in the case • at bar, it is not impossible for the plaintiff or the court in a given case to decide whether the person is related by blood to the testatrix or her husband to the 10th degree, or whether that person is incurably ill or in need. I do not perceive such discretionary powers to be mere “ powers collateral ” or devoid of any legal duty as the plaintiff suggests. Quite the contrary, I hold that the plaintiff remains throughout under a duty to consider each case, to decide whether and how much to distribute, to do so in good faith, and to place its own interests with respect to the income second to that of the sick or needy relatives, who by the testa *269 trix’s own definition, and, with the plaintiff’s assent by accepting the trust corpus, have ‘ ‘ first call ■’ ’ on the income thereof.
As stated by Jessel, M. R., in Tempest v. Lord Comoys (21 L. R. Ch. D. 571, 578 [C. A. 1882]): “It is very important that the law of the Court on this subject should be understood. It is settled law that when a testator has given a pure discretion to trustees as to the exercise of a power, the Court does not enforce the exercise of the power against the wish of the trustees, but it does prevent them from exercising it improperly. The Court says that the power, if exercised at all, is to be properly exercised. * * * But in all cases where there is a trust or duty coupled with the power the Court will then compel the trustees to carry it out in a proper manner and within a reasonable time.”
And in Matter of Cawthrope (26 Ont. Week. Rep. 762, 767; 3 A. L. R. 300 [1914], supra) the court characterized the bequest as “ a gift which [it] would carry into effect if the executors failed to exercise their power * * * but which the court would not interfere with if the executors in good faith, and uninfluenced by improper motive, exercise, within a reasonable time, their power over it.”
So, in the case of Litcher v. Trust Co. of New Jersey (11 N. J. 64, 81, supra) the court said: “Where the powers are coupled with trust or duty the court will enforce a proper and timely exercise thereof.”
(XIII)
The sum of what I have held thus far is that — under the law of New Jersey, the State of the applicable domicile — the challenged bequest is valid, and — under that law, too — a valid trust has been established by that bequest (both in respect of the categorized relatives of the testatrix and of the named charitable trustee), and — under that law, as well — the rights and duties of the respective parties have been delineated, in consonance with what I have concluded the courts of New Jersey would themselves determine.
The guardian ad litem — as I have hereinbefore indicated — has stated that his assumption is that it is New York law that should be applied, arguing that, “ by general acceptance, the law of the place of administration and of the state of incorporation of the charitable legatee governs the validity and construction of the gift, certainly if necessary to do so in order to uphold it, and certainly too where those to be benefitted are by no means limited to the ‘ community ’ where the will was *270 probated (5 Scott on Trusts, 3d ed., §§ 592-596; and see Guaranty Trust Co. of New York v. Catholic Charities, Archdiocese of New York, 141 N. J. Eq. 170, citing New York decisions; Manley v. Fiske, 66 Misc. 388, 139 App. Div. 665; 201 N. Y. 546.) ”
If I read aright section 47 of the Decedent Estate Law of the State of New York (see section III of this opinion, supra), the mechanics of the judicial process would, in this case, involve (as I have proceeded) an initial approach towards the law of the place of the domicile; and if — under that law — the bequest attacked can be sustained, the trusts upheld, and the testatrix’s intentions carried out and fairly implemented, then it is the law of the State of the domicile that is applicable; and, by consequence, I need not concern myself with the state of the law on the subject of the State of testamentary administration and the State of incorporation of the trustee.
As a result, I do not deem it needful or useful to indicate here my views as to whether or not the assumption of the guardian is warranted, his argument persuasive, or his citations apposite.
Suffice it to say that I have not been presented with — nor have I independently found — any authoritative precedent in New York contrary to my several determinations herein. And thus do I end this odyssey by formally stating that:
(XIV)
This opinion, specifying as it does the appropriate findings of fact and conclusions of law, is the decision of the court (CPLB 4213). Accordingly, settle judgment in favor of the plaintiff.

 The plaintiff was originally incorporated under the name of The Ministers and Missionaries Benefit Board of the Northern Baptist Convention. Subsequently, this was changed to The Ministers and Missionaries Benefit Board of the American Baptist Convention.

 Service of the summons and complaint was duly made by mail and by publication.
The defendants Donald White McKay, Helen McKay Pasto and Joyce Helen Pasto (also known as Joyce H. Miller) filed a notice of appearance, but defaulted in pleading. These parties are hereinafter referred to collectively as the “ contesting defendants ”.
A guardian ad litem was duly appointed to represent those defendants who may be infants, incompetents, unknown, or in the military service. He duly appeared herein, filing an affidavit to the effect that he submits no objection to the entry of the default judgment, after the inquest sought by the plaintiff, but requests that when the order on the application is entered, suitable provision be made for the rights of those persons whose interests the guardian was directed to protect. Upon the demise of this guardian, a substitute guardian ad litem was duly appointed by me. He filed an answer in which he avers that he has no knowledge or information sufficient to form a belief as to any of the allegations of fact contained in the complaint and joins in the prayer for relief to the extent of asking the court to declare the rights of all parties in the premises.
The Attorney-General of the State of New York also appeared herein “ as the sole, inherent and statutory representative of the ultimate, indefinite and uncertain beneficiaries of gifts, grants, devises and bequests for religious, educational, charitable or benevolent uses or purposes pursuant to article 8 of the Estates, Powers and Trusts Law”. In a communication to the court, with copies to all counsel who had appeared herein, the Attorney-General stated that the court should grant the relief that is requested in the complaint.

 Heretofore, the plaintiff brought on a motion at Special Term, Part I, of this court, to place the proceeding on the Trial Term calendar for the purpose of taking an inquest, and evaluating the validity of the complaint upon the default of all the defendants to answer. The sole opposition was by the contesting defendants hereinabove specifically named. My learned colleague decided as follows: “ While these defendants urge a different construction of the bequest than that followed by plaintiff, there is no issue raised as to their default in pleading nor any basis propounded for excusing same. As to those defendants’ contention that they should have an opportunity to contest plaintiff’s right to the declaration sought, granting the instant motion would not deny them that opportunity. Accordingly, and in view of the fact that a default judgment awarding plaintiff final relief may not be entered without an inquest in an action such as this (Reiner v. Prudential Ins. Co., 48 N. Y. S. 2d 880), the motion is granted. This matter is set down for inquest at Trial Term, Part I.”
Accepting this ruling as the law of the case (Mount Sinai Hosp. v. Davis, 8 A D 2d 361, 362-363, mot. for lv. to app. den. 9 A D 2d 641; see, also, Erdheim v. Mabee, 109 N. Y. S. 2d 267, 269-270, affd. 279 App. Div. 988; Fried V. Lakeland Hide & Leather Co., 14 Misc 2d 305, 308; Sufrin v. Arbeau, Inc., 24 Misc 2d 909, 914, stay pending appeal den. 10 A D 2d 554, affd. 14 A D 2d 858; Aacon Contr. Co. v. Herrmann, 27 Misc 2d 197, 199, affd. 10 A D 2d 818; Matter of Lacaille [Feldman], 44 Misc 2d 370, 373; Hummel v. Hummel, 62 Misc 2d 595, 598, n. [2]; Matter of Haas, 33 A D 2d 1, 7-8; cf. James v. Powell, 52 Misc 2d 1048, 1052, writ of prohibition den. Powell v. Supreme Court of State of N. Y., 26 A D 2d 779, stay den. 27 A D 2d 521, mod. James v. Powell, 32 A D 2d 517), the parties and I — to whom the action was assigned for trial — proceeded on the basis of giving the plaintiff, the contesting defendants, the guardian ad litem and the Attorney-General full opportunity to present proof.

 The present New York statute — EPTL, which became effective on September 1, 1967 — modified the rule set forth above.
EPTL 3-5.1 (subd. [e]) reads as follows: “Interpretation of a testamentary disposition of personal property shall be made in accordance with the local law of the jurisdiction in which the testator was domiciled at the time the will was executed.”
“Interpretation” is defined in EPTL 3-5.1 (subd. [a], par. [6]) as follows: “ ‘ Interpretation ’ relates to the procedure of applying the law of a jurisdiction to determine the meaning of language employed by the testator where his intention is not otherwise ascertainable.”
In subdivision (d), it is provided: “A testamentary disposition of personal property intrinsically valid under the law of the jurisdiction in which the testator was domiciled at the time the will was executed shall not be affected by a subsequent change in the domicile of the testator to a jurisdiction by the law of which the disposition is intrinsically invalid.”
“ Intrinsic validity” is defined in EPTL 3-5.1 (subd. [a], par. [4]) as follows: “(Intrinsic validity’ relates to the rules of substantive law by which a jurisdiction determines the legality of a testamentary disposition, including the general capacity of the testator.”
I refer to the foregoing only for the sake of completeness, because I hold that the provisions of EPTL have no applicability here, in the light of the chronological facts in the ease at bar. EPTL 1-1.5 states: “Unless otherwise stated therein, the provisions of this chapter apply to the estates, and to instruments making dispositions or appointments thereof, of persons living on its effective date or born subsequent thereto, without regard to the date of execution of any such instrument; except that the provisions of this chapter shall not impair or defeat any rights which have accrued under dispositions or appointments in effect prior to its effective date.”

 In Matter of Fabbri (2 N Y 2d 236, 239 [1957]) the court stated: “At the time o£ his death testator was domiciled in Maine and, since no contrary intent appears in the will, the law of that State determines the validity and effect of the will with respect to the disposition of personal property (1 Davids on New York Law of Wills, § 452; Decedent Estate Law, § 47; Matter of Gifford, 279 N. Y. 470, 474-475).”
The testator designated a New York resident as trustee and a New York trust company as successor trustee. Upon the death of the former, his account was judicially settled and the assets constituting the residuary estate were turned over to the United States Trust Company of New York, as the successor trustee, which instituted the proceeding in Matter of Fabbri for settlement of its account and for a declaratory judgment concerning the effect of the testator’s failure to exercise a power of appointment.
The Court .of Appeals did not discuss or perhaps even consider (it was not referred to in the briefs) the fact that the naming of a foreign trust company as trustee is a factor bearing upon the choice of law. The court did apply New York law in arriving at its result and this was because — -as stated in the briefs and in the opinion (p. 236) — the parties, as well as the court, were of the view that there was no conflict between the laws of the States of Maine and of New York.
In Cross v. United States Trust Co. of N. Y. (131 N. Y. 330 [1892]) the decedent’s domicile was Rhode Island and the trustee’s locale New York. The court said (pp. 339-340) that “It is a general and universal rule that personal property has no locality. It is subject to the law of the owner’s domicile as well in respect to a disposition of it by act inter vivos, as to its transmission by last will and testament, and by succession upon the owner dying intestate.” And the court held (p. 339) that an action could not be successfully “maintained [in New York] to declare invalid a disposition of personal property by will, perfectly lawful and valid at the place of the owner’s domicile, when made, but which would be invalid if this were a New York will.”
In the case of Rubin v. Irving Trust Co. (305 N. Y. 288, 299 [1953]), where both domicile and trusteeship were located in New York, the court observed: “ No authority need be cited for the settled proposition that the law of the testator’s final domicile is the law of the will and controls the devolution of estates at least insofar as personalty is concerned.” (See, also Matter of Sherman, 71 N. Y. S. 2d 492 [Sup. Ct., N. Y. County, 1947] ; Matter of Grant-Suttie, 205 Misc. 640 [Surrogate’s Ct., N. Y. County, 1954] ; Matter of Rogers, 37 Misc 2d 366 [Sup. Ct., N. Y. County, 1962].)

 No proof to that effect was presented to me in the ease at bar.

 The clauses are:
“ nineteenth : When all payments, Bequests, legacies and etc., have Been finally paid and no further payments are to Be made under the terms of this will as mentioned in the previous sections, then what principal remains of the entire estate, I order that same be divided according to method outlined herewith and following, that is
“twentieth : A committee of not more than seven (7) nor less than (5) Be selected and appointed, two of whom if living to Be my brother or sisters, one the President of Seton Hall College, (R.C.) South Orange, New Jersey, one the President of Fordham University (R.C.) Fordham, N. Y., balance selected by executors or trustee, and this committee is to divide the principal as follows:
“1st: Endow a chair of Public Speaking and to be free to students, and to be known as Thomas J. Kavanagh chair of Public Speaking, or a name that conveys the same meaning.
“2nd: Set aside a sufficient fund to pay for and educate a young man for the priesthood.
“3rd: Donate One .thousand (1000) for the Roman Catholic missions.
*249 “ 4th: Set aside a fund to educate one young man in College free, same to he given to a worthy young man who has the ambition, but whose parents cannot afford to pay his way through, when one graduates another can be started on his college course, and to be known as The Thomas J. Kavanagh Scholarship.
“ 5th: Any balance still remaining and not set aside for any direct purpose, is to be used to help the poor and unfortunate, and relieve or help relieve those in poverty or distress and provide them with as much of the comforts of life as is possible, but must not be used for gain or profits as it is my intention and desire, that all I have had of this world’s goods in comfort and pleasure, were given me by God Almighty only as a trust, to be returned back and to help those who in this life have not been so blessed as I.”

 These defendants state, in their post-trial brief, that, “had [the testatrix] stopped with the first paragraph of Paragraph 10th, there would be no issue before this Court today.”

 Professor Leach takes the view that any number of measuring lives may be selected, and that Villar “ certainly represents the outside limit of the permissible number of lives ” (51 Harv. L. Rev. 638, 642). Professor Gray does not place a maximum on the number of measuring lives (op. cit. § 216, p. 217). Professor Ernst Freund notes that “ This liberality is only qualified by the requirement that the expiration of the lives must be provable ” and adds: “ The qualification impairs the definiteness of the rule. Even though it be said that it is not a question of whether the Rule against Perpetuities has or has not been infringed, but whether the gift is void for uncertainty, it remains true that there are few criteria more uncertain in their application than that of certainty or uncertainty ” (24 Ill. L. Rev. 727).
The present statute in New York provides that “ In no case shall lives measuring the permissible period of vesting be so designated or so numerous as to make proof of their end unreasonably difficult.” (EPTL 9-1.1, subd. [b].) The related practice commentary by Professor Rohan, contained in McKinney’s Consolidated Laws of New York, 1969-1970 Supplement makes the following observation: “The permissive period now allows the draftsman to employ any number of measuring lives, provided they are not ‘ so numerous as to make proof of their end unreasonably difficult.’
“Prudence and the English experience with ‘royal lives’ clauses, would indicate that one should not employ an unduly large number of measuring lives. See, e.g., In re Villar [1929] 1 Ch. 243.”

 Under section 11 of the Personal Property Law, which was in effect in this State at the time of the testatrix’s death, the measuring lives were "two lives in being”. This rule was abandoned in 1958, and “lives in being” was substituted therefor (L. 1958, ch. 152, § 1, now EPT-L 9-1.1.)

 Cf. Matter of Lawler, 215 App. Div. 506, 509-510 [1926]).

 “ 3A :4-5. To other kindred and representatives. If there be no husband or widow, child or any legal representative of a child, nor a parent, brother or sister, nor a legal representative of any brother or sister, then the intestate’s property, real and personal, shall descend and be distributed equally to the next of kindred, in equal degree, of or unto the intestate and their legal representatives. Representatives of ancestors nearest in degree to the decedent shall take to the exclusion of represenatives of ancestors more remote in degree.”

 Cf. Dalton v. White (supra) where the escheat statute of the District of Columbia limited distribution to relations within the fifth degree.